UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR. 2:11-00504 WBS |
| Plaintiff, | |
| v. | ORDER |
| JEWEL L. HINKLES, a.k.a. CYDNEY SANCHEZ, | |
| Defendant. | |

----oo0oo----

This matter is before the court on defendant's appeal from the Magistrate Judge's Detention Order, (Docket No. 93), revoking defendant's pretrial release and ordering her to self-surrender to the United States Marshal by December 10, 2012. (Docket No. 94.) The Magistrate Judge found, <u>inter alia</u>, that there was probable cause to believe defendant violated the conditions of pretrial release by committing the crime of bankruptcy fraud in violation of 18 U.S.C. § 157. <u>See</u> 18 U.S.C. § 3148(b)(1)(A).

1

The Magistrate Judge's determination must be affirmed unless "clearly erroneous or contrary to law." Coleman v. Schwarzenegger, Civ. No. S-90-0520, 2008 WL 2468492, at *1 (E.D. Cal., N.D. Cal. June 17, 2008) (quoting Fed. R. Civ. Proc. 72(a)); see also 28 U.S.C. § 636(b)(1)(A).[1] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Leubner v. County of San Joaquin, Civ. No. 2:08-0853, 2012 WL 895430, at *1 (E.D. Cal. Mar. 15, 2012) (Burrell, J.) (quoting Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 622 (1993)).

Thus, the Magistrate Judge's determination must be affirmed unless his determination of probable cause to believe defendant had committed a state or federal crime while on pretrial release was clearly erroneous or contrary to law. "[P]robable cause means 'fair probability, not certainty or even a preponderance of the evidence.'" United States v. Krupa, 658 F.3d 1174, 1177-78 (9th Cir. 2011) (quoting United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). "[W]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question, for which [n]either certainty nor a preponderance of the evidence is required." Id. (internal quotation marks omitted).

This court has reviewed the transcript of the hearing before

---

[1] See also United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001) ("[A] magistrate court's probable cause determination in the revocation context comprises a preliminary, non-dispositive matter under § 636(b)(1)(A), and a district court must apply a clearly erroneous standard of review.").

2

the Magistrate Judge and the papers submitted by the parties, has heard and considered the testimony of the witnesses, and concludes that the Magistrate Judge did not commit clear error in finding probable cause to believe that defendant committed bankruptcy fraud in violation of 18 U.S.C. § 157.

The elements of bankruptcy fraud are: first, the defendant devised or intended to devise a scheme or plan to defraud; second, the defendant acted with the intent to defraud; third, the defendant's act was material (it had a natural tendency to influence, or was capable of influencing the acts of an identifiable person, entity, or group); and fourth, the defendant made a false or fraudulent representation, claim or promise concerning or in relation to a proceeding under a Title 11 bankruptcy proceeding to carry out or attempt to carry out an essential part of the scheme.  Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 8.11 (2010).  "[T]he crime of bankruptcy fraud under 18 U.S.C. § 157 requires a specific intent to defraud an identifiable victim or class of victims of the identified fraudulent scheme."  United States v. Milwitt, 475 F.3d 1150, 1156 (9th Cir. 2007).  A defendant may be found guilty of bankruptcy fraud even if she personally did not commit the act or acts constituting the crime, but aided and abetted in its commission if she "knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of" the fraud.  Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 5.1 (2010).

The evidence shows that the LaMonicos contacted defendant, who associated with the DLNET 1 Law Center, for assistance to avoid losing their home.  Although there was some initial confusion at the hearing as to when the LaMonicos first met with defendant, Theresa

3

1 LaMonico clarified at the hearing that she and her husband, Richard
2 LaMonico, handed defendant a check for $750 on January 16, 2012.[2]  As
3 Mrs. LaMonico told an investigator with the Postal Inspection Service,
4 she and her husband met with defendant mid-January 2012 at which time
5 defendant told them she was filing a bankruptcy petition for the
6 LaMonicos in Nevada, or a 'creditors filing' as Mrs. LaMonico recalled
7 defendant describing the filing.  Theresa LaMonico reported that
8 defendant told her and her husband that she would be filing in Nevada
9 because it is sometimes easier to file out of state and that banks are
10 sometimes unaware of the filing.  Mrs. LaMonico also said that
11 defendant informed them that she had people in Nevada who would file
12 the petition for her.  Finally, Mrs. LaMonico explained that she and
13 her husband were relying on defendant's expertise and deferred to her
14 decisions to prevent them from losing their residence.  They believed
15 the payments made to defendant and DLNET were for filing fees and
16 that they were not paying defendant for her services.  The day
17 after this meeting, January 17, 2012, an involuntary bankruptcy
18 petition was filed in Nevada under the name of Richard LaMonico.
19      As explained above, the LaMonicos gave the $750 check
20 to defendant for what they believed to be filing fees for the
21 Nevada bankruptcy petition or "creditors filing."  They also sent

---

[2] The confusion appears to stem from a report prepared by the Postal Inspector, which suggests that the LaMonicos did not met with defendant until March 2012.  (See Mot. for Revocation of Release Ex. 4 at 2.)  However, upon careful review of that report, it appears that the LaMonicos did not met with defendant in the DLNET1 offices before that time, although they had spoken with her and met her at a different location previously.  (See id. at 36 (reporting that Theresa LaMonico stated that she must have first contacted defendant in April 2011); id. at 23 (reporting that Theresa LaMonico stated that she met with defendant by the intersection of Santa Monica and Sepulveda in mid-January 2012).

4

a $250 check dated February 27, 2012, and made out to DLNET 1 Center, to provide additional reimbursement for the same Nevada filing. However, the fees for the involuntary bankruptcy petition filed in Nevada are only $306.00, not $1000.00. The $250 check was deposited into an account owned by defendant's husband.

Three material misrepresentations were made in the involuntary bankruptcy petition: listing false aliases for Richard LaMonico; providing fictitious creditors for Richard LaMonico; and asserting venue to be proper in the District of Nevada. At the hearing, Mrs. LaMonico confirmed that her husband used none of the aliases listed on the petition, that none of the creditors listed were ever creditors of her husband, and that she and her husband had never lived in nor had a business in Nevada.

Also at the hearing, the court was informed that another associate of defendant's at DL NET1 Law Center, Jerel Davis, provided the money and the involuntary petition filed in Richard LaMonico's name to a woman in Las Vegas, who filed it with the bankruptcy court there. Given defendant's communications and relationship with the LaMonicos, there is probable cause to believe that she was part of a scheme to file a fraudulent bankruptcy petition to prevent the bank from foreclosing on the LaMonicos' property. Specifically, Theresa LaMonico explained that defendant told her that the purpose for filing a bankruptcy in her husband's name was "so that the foreclosure proceedings would be halted".

Counsel for defendant points the court to defendant's refusal to file a second bankruptcy for the LaMonicos in March

1  2012.  Defendant's refusal to personally file a bankruptcy
2  petition at a later time, however, does not attenuate the
3  evidence supporting the finding of probable cause to believe that
4  she had a role in the scheme to file the Nevada petition and
5  thereby defraud the LaMonicos' creditors.
6          From all the foregoing, there is probable cause to
7  believe that someone associated with the DL NET1 Law Center
8  devised a scheme or plan to defraud the bank out of its right to
9  foreclose on the LaMonicos' property by intentionally making
10 false material representations in the bankruptcy petition, and that
11 defendant at the very least knowingly aided and abetted the filing
12 of that fraudulent petition.  Accordingly, the Magistrate Judge
13 did not commit clear error in finding probable cause to believe
14 that defendant violated 18 U.S.C. § 157 while on pretrial
15 release.[3]
16         IT IS THEREFORE ORDERED that the Magistrate Judge's
17 Detention Order of December 6, 2012, be, and the same hereby is,
18 AFFIRMED.
19 DATED:  January 14, 2013

                    _____
                    WILLIAM B. SHUBB
                    UNITED STATES DISTRICT JUDGE

---

    [3]   Because the court affirms the Magistrate Judge's determination on this ground, there is no need to discuss the other grounds upon which the Magistrate Judge based his determination to revoke pretrial release.